**UNITED STATES of America,**
**Plaintiff,**

v.

**Lyndon A. DURANT, Defendant.**

**No. 61 CR 260.**

United States District Court
N. D. Illinois, E. D.

Oct. 1, 1962.

James P. O'Brien, U. S. Atty., Chicago, Ill., for plaintiff.

George D. Crowley, Crowley, Barnett & Goschi, Chicago, Ill., for defendant.

WILL, District Judge.

This Court, sitting without a jury, having heard all of the testimony, examined all the evidence, the indictment numbered 61 CR 260, the bill of particulars, the stipulations of the parties filed of record, and the written and oral arguments of counsel in this cause, upon request of the defendant, pursuant to rule 23(c), Federal Rules of Criminal Procedure, 18 U.S.C.A., hereby finds the following facts to be true:

1. On April 15, 1955, the defendant, Lyndon A. Durant, filed and caused to be filed with the District Director of Internal Revenue for the Chicago Internal Revenue District, at Chicago, Illinois, a joint income tax return on behalf of himself and his wife, Kathleen Durant, for the calendar year 1954, which return was prepared by Herbert L. Oettinger and signed by the defendant. The total income tax paid by the defendant for the calendar year 1954 was $132,953.48, the amount of tax stated in the said return to be due and owing upon the stated joint taxable income of $273,802.81 of him and his wife, which joint taxable income was earned and/or derived by him in the said calendar year.

2. On April 9, 1956, the defendant, Lyndon A. Durant, filed and caused to be filed with the District Director of Internal Revenue for the Chicago Internal Revenue District, at Chicago, Illinois, a joint income tax return on behalf of himself and his wife, Kathleen Durant, for the calendar year 1955, which return was prepared by Herbert L. Oettinger and signed by the defendant. The total income tax paid by the defendant for the calendar year 1955 was $29,136.15, the amount of tax stated in the said return to be due and owing upon the stated joint taxable income of $64,332.54 of him and his wife, which joint taxable income was earned and/or derived by him in the said calendar year.

3. On April 15, 1957, the defendant, Lyndon A. Durant, filed and caused to be filed with the District Director of Internal Revenue for the Chicago Internal Revenue District, at Chicago, Illinois, a joint income tax return on behalf of himself and his wife, Kathleen Durant, for the calendar year 1956, which return was prepared by Bansley and Kiener, certified public accountants, and signed by the defendant. The total income tax paid by the defendant for the calendar year 1956 was $31,859.87, the amount of tax stated in the said return to be due and owing upon the stated joint taxable

income of $72,346.08 of him and his wife, which joint taxable income was earned and/or derived by him in the said calendar year.

4. The United Manufacturing Company, an Illinois corporation (hereinafter called "United"), of which the defendant, Lyndon A. Durant, was the President and sole stockholder, during each of the calendar years 1954, 1955 and 1956, made expenditures for or on behalf of the defendant and for his personal economic benefit in the following total amounts:

| 1954 | $ 51,716.17 |
| 1955 | 66,877.19 |
| 1956 | 93,735.61 |

5. Each of the expenditures by United reflected in finding four hereof were either recorded in the records of United as expenses of the said corporation and deducted by the said corporation as business expenses of the said corporation in each of its corporate income tax returns filed for the respective calendar years 1954, 1955 and 1956, or were recorded as an acquisition of an asset by the said corporation, which was thereafter depreciated by it and the said depreciation then deducted by the corporation on its income tax returns as an expense. None of the aforesaid expenditures in fact constituted an expense or acquisition of assets of United and were all of a personal economic benefit to the defendant.

6. Of the expenditures made by United reflected in finding four hereof, and all of which expenditures were of a personal economic benefit to the defendant in the calendar years 1954, 1955 and 1956, respectively, none were included in the amount of joint taxable income stated in the joint income tax returns filed by the defendant on behalf of himself and his wife for the calendar years 1954, 1955 and 1956, respectively.

7. The payments made by United in the years 1954 to 1956, referred to in finding four hereof, for the defendant's personal economic benefit were income to the defendant in each of the respective amounts for each of the respective years.

8. The defendant, Lyndon A. Durant, as President of United, was its chief executive officer as well as its chief engineer, designer and electronic specialist. He delegated authority for the supervision of the administrative affairs of the corporation to Herbert L. Oettinger, Vice President of the corporation, who was responsible for the keeping of all corporate books of account during the years 1954, 1955 and 1956. During the years 1954, 1955 and 1956, the corporation employed one Walter Taibleson, a certified public accountant, as controller, who was subordinate to Oettinger, the Vice President, as was Miss Frances Croson, who was in charge of the accounts payable.

9. The books of account of the corporation contained an account entitled "L. A. Durant." During the years 1954, 1955 and 1956, United made expenditures for or on behalf of the defendant for his personal use and benefit aggregating $815,021.08 of which $602,692.11 was charged to the personal account entitled "L. A. Durant" and the aggregate of $212,328.97 reflected in finding four hereof was charged as set forth in finding five hereof.

10. Commencing in December 1951, the corporate income tax returns of United for the years 1949 and 1950 were examined by Internal Revenue Agent Alfred E. Zivin. Agent Zivin questioned four general categories of items in the corporation's books and records of account, one of which was the use of corporate funds for personal expenses. In connection with his audit of the corporation's returns, Agent Zivin had several conferences at which both the defendant and Oettinger were present and in which the question of charging personal expenses to the corporation was discussed. On December 23, 1951, Agent Zivin had a final conference with the defendant and Oettinger, at which all four categories of items were discussed and the agent advised the defendant and Oettinger that the practice of charging personal expenses to the corporation should be stopped. The defendant replied that

if there were personal expenses charged to the corporation, they should be charged to his personal account.

11. In February of 1954, a second Internal Revenue Agent, William H. Wagar, examined the returns of United for the years 1949 through 1953. He too questioned the same four general categories which Agent Zivin had raised and disallowed substantial personal expenses of the defendant which had been charged to the corporation in each of the five years. Agent Wagar likewise had conferences with the defendant and Oettinger during the course of which he informed the defendant that it was improper for him to charge personal expenses to the corporation although Agent Wagar did not discuss the specific items with the defendant but discussed them with Oettinger.

12. Neither the defendant nor anyone else instructed the controller Taibleson to make any changes in the bookkeeping and accounting practices of the corporation after either agent's examination. On a number of occasions, the defendant brought invoices and bills to Taibleson and directed him to pay the same without designating any account to which they were to be charged. In the absence of a specific direction by defendant to charge a particular item to his personal account, it was the established practice of the corporation to charge such items to various corporate accounts.

13. On a number of occasions during the years 1954 through 1956 the defendant instructed the purchasing agent of the corporation, Carl J. Olson, to purchase merchandise for him. Ordinarily there would be no formal requisition or purchase order and the merchandise would be disposed of as directed by the defendant. On no occasion did the defendant instruct Olson to charge the purchases to his personal account and, pursuant to the established practice of the corporation, Olson charged such purchases to various corporate accounts. On some occasions the defendant would instruct Olson to make purchases for a separate corporate project which was known as "Caravan" and the defendant

would indicate that such purchases were to be charged to the Caravan account.

14. The defendant knew at the time he filed his income tax returns for each of the years 1954 to 1956, respectively, that he had taxable income as a result of the payments made by United for his personal economic benefit as set forth in finding four hereof.

15. Each of the income tax returns filed by the defendant for the years 1954 to 1956, as set forth in findings 1, 2 and 3 hereof, were false when filed by the defendant and the defendant knew them to be false at the time of their filing.

16. The defendant wilfully and knowingly attempted to evade and defeat a part of the income tax due and owing by him and his wife to the United States of America for each of the years 1954, 1955 and 1956 respectively, by knowingly and intentionally filing false and fraudulent joint income tax returns on behalf of himself and his wife, Kathleen Durant, wherein, in each of the said returns, he knowingly and intentionally falsely stated their joint taxable income and the income tax due and owing thereon. This conduct on the part of the defendant constituted, in each of the years 1954, 1955 and 1956, a violation of section 7201, Internal Revenue Code of 1954, 26 U.S.C. § 7201.

Wherefore, the Court finds the defendant, Lyndon A. Durant, guilty as charged in each of Counts 1, 2 and 3 of indictment 61 CR 260.

OPINION

The defendant, Lyndon A. Durant, is charged in a three count indictment with a wilful and knowing attempt to evade and defeat the income taxes due and owing for himself and his wife for each of the years 1954, 1955 and 1956, by causing to be filed false and fraudulent income tax returns for each of such years, in violation of section 7201 of the Internal Revenue Code of 1954, 26 U.S.C. § 7201.

It has been stipulated by the parties that the United Manufacturing Company (hereinafter called "United"), of which

the defendant was the sole stockholder and principal executive officer during the years 1954, 1955 and 1956, made expenditures for or on his behalf and for his personal economic benefit in an aggregate amount of $212,328.97 as follows:

| | |
|---|---|
| 1954 | $ 51,716.17 |
| 1955 | 66,877.19 |
| 1956 | 93,735.61 |

It has been further stipulated that all of these items were charged to various corporate accounts and that none of them were reported as income by the defendant and his wife in their joint returns for the years in question. During the same period the corporation made additional expenditures for or on behalf of the defendant and for his personal economic benefit in an aggregate of $602,692.11 which were charged to a personal account on the books of the corporation entitled "L. A. Durant."

On behalf of the defendant, it is urged that while there is no dispute that the $212,328.97 was paid for his personal benefit by the corporation and charged to corporate accounts during the relevant years, this was done without his personal knowledge, and he assumed that these items, together with the $602,692.11, were all being charged to his personal account. Accordingly, it is contended that (1) the amounts in question were loans and did not constitute income to the defendant and (2) he lacked the requisite criminal intent to sustain a conviction under the applicable section of the Internal Revenue Code.

With respect to the first contention, the record is clear that at no time were the payments in question ever considered as loans by the parties. The corporation did not carry them on its books as notes or accounts receivable; no notes or other evidence of loans were ever executed by the defendant; no interest was ever paid to the corporation by the defendant; no maturity or repayment date was set; no repayment was made; defendant never advised any of the responsible subordinates that the payments were to be treated as loans and charged to his personal account; in fact, no action was taken either by the defendant or the corporation which would indicate that the payments were loans.

If the defendant intended these transactions to be loans, it behooved him to insure that the corporate records so reflected them. Otherwise, there would be no way in which the corporation could ever know what amounts were owed to it. Where, as here, substantial amounts are charged to a personal loan account at the instructions of the principal officer and sole stockholder, the only possible inference is that additional items not so charged because he gave no such instructions were not intended to be and were not loans.

The second question, that of whether or not the defendant had the requisite intent, presents in and of itself two questions, first, whether he knew that the corporation was paying his personal expenses, and, second, if he did, whether he knew that such items were income to him which should have been included in his personal income tax return and wilfully or deliberately failed to include them therein.

In support of the contention that he did not know the corporation was paying his personal expenses, the defendant has introduced testimony establishing that although he was the principal executive officer of the corporation, he delegated the responsibility for the maintenance of the books and records and the administration of the company's office to subordinates on whom he relied for the proper handling thereof.

The record also discloses that the defendant had been advised by two internal revenue agents, who audited the corporation's and the defendant's income tax returns for prior years, that the charging of personal expenses to corporate expense accounts was improper and should be stopped but that the defendant did not instruct his subordinates to make any changes in the established and long-standing corporate practice. That practice was to charge any bill or invoice submitted by the defendant to a corpo-

rate account unless he specifically designated that it should be charged otherwise. There is, however, no evidence that the defendant at any time instructed his subordinates to adopt this practice and to charge his personal expenses to corporate accounts.

It is difficult to believe, though, that the defendant was unaware of what was actually taking place. It has been stipulated, for example, that during the years in question he gave credit cards on various petroleum companies such as Standard Oil, Shell, Phillips, Pure Oil, etc., to his wife, his sister and a number of personal friends, authorizing them to make purchases to be charged to the account of the corporation. Similarly, he instructed the purchasing agent of the corporation to make numerous purchases of merchandise unrelated to the business activities of the corporation and to be delivered to relatives and personal friends while at no time instructing that such purchases be charged to him personally. The substantial number and volume of such transactions alone, two thousand five hundred and seventy-two in the three years, compel the conclusion that the defendant was aware of them and the manner in which they were being handled on the corporation's books.

In addition to the foregoing, the defendant on a number of occasions personally issued corporate checks to pay for his personal expenses with either no indication on the voucher portion thereof that they were personal or, in some instances, made notations such as "commercial photos" or "Springfield, Illinois— Eagle River Trip" which were susceptible of the interpretation that they were proper corporate expenses. Nor did he ever advise his subordinates that any of such checks were in fact personal.

There remains then the question of whether defendant knew that the payments by the corporation for his personal benefit were income to him which he wilfully or deliberately failed to include in his personal returns for the years 1954–1956. That such payments were, in law, income to the defendant must likewise have been known by him since they were similar in nature to the more than $105,000.00 of disallowed corporate expenses previously charged to him as income by the revenue agents in their audits of the years 1949 through 1953.

Intent or wilfulness is, of course, a subjective fact and may be determined either from direct proof of statements or acts or by inference from circumstantial evidence. Paschen v. U. S., 7 Cir. 1934, 70 F.2d 491.

It is elementary that negligence or carelessness are not sufficient to constitute the requisite criminal intent. Gaunt v. U. S., 1 Cir. 1950, 184 F.2d 284. Nor can intent be inferred from the mere understatement of income or from the failure to report income which is not commonly recognized as such in the normal affairs of men. U. S. v. Bridell, et al., D.C.N.D.Ill.1960, 180 F.Supp. 268.

Defendant here, however, after being warned by two revenue agents that the charging of personal expenses to corporate accounts and the failure to report such items as income in his joint returns was improper, made no change whatsoever in the challenged practices. What may have been negligence or mere understatement of income in the earlier years can hardly be so considered in later years after the agents' warnings. The only reasonable inference from defendant's conduct is that he deliberately and wilfully continued practices which he had been advised were improper and the effect of which was substantially to understate his taxable personal income.

There is a point of repetition at which action originally careless or negligent becomes deliberate and wilful. The defendant passed that point when, after warnings by two revenue agents, he did nothing but continue the improper and challenged practices.

In the light of all of the foregoing, I am satisfied beyond a reasonable doubt that the defendant is guilty as charged in each of the three counts of the indictment. Judgment will be entered accordingly.